**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**PAULA VALLO**,

Plaintiff,

vs. Civ. No. **02-1178 MCA/WDS**

**UNITED STATES OF AMERICA**,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

**THIS MATTER** is before the Court on ***Plaintiff's Motion to Amend*** filed January 30, 2003 [doc. no. 17] and ***United States' Motion to Dismiss or, in the Alternative, for Summary Judgment*** filed January 13, 2003 [doc. no. 11]. Both motions are fully briefed [doc. nos. 12, 13, 16, 18, 19, 21, 35], and there is no need for oral argument. After careful consideration of the arguments presented by the parties, along with their exhibits and the pertinent law, the Court denies Paula Vallo's (Plaintiff) request to amend the complaint and grants the United States' (Defendant) request for summary judgment. Thus, Plaintiff's complaint will be dismissed with prejudice. The Court's reasoning is set out below.

## FACTUAL BACKGROUND

On September 19, 2002, Plaintiff brought a ***Complaint for Sexual Assault, Battery, & Money Damages***, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq*.[1] [Doc. No. 1.] The complaint sets forth three claims against Defendant: (1) sexual assault and battery (Count I); (2) individual negligence for failure to properly train and supervise a detention officer, George Brown (Count II); and (3) institutional negligence for failure to perform adequate background checks for hiring and training (Count III). [Id.]

Plaintiff specifically alleges that in February 2001, while incarcerated at the Laguna Pueblo Corrections Center (LPCC)[2] in Laguna, New Mexico, Detention Officer George Brown (Brown) sexually assaulted and battered her. During her incarceration, Plaintiff claims that she became aware that LPCC correctional officers engaged in a pattern of initiating sexual relations with inmates, and that the guards received sex from inmates in exchange for providing those inmates with more favorable treatment. Based on Plaintiff's perception that Brown was sexually interested in her, she believed that sexual relations with him might benefit her, "perhaps easing the conditions of her incarceration." [Doc. No. 1, ¶ 9.] Plaintiff further asserts that she and Brown engaged in sex while in the booking area of LPCC when no one was around. Plaintiff claims, however, that because of Brown's authority over her, she was coerced into having non-consensual sexual relations with Brown,

---

1 The FTCA provides a cause of action against the United States for persons injured by the tortious acts of a federal employee when that employee was acting within the scope of his/her office or employment. 28 U.S.C. § 1346(b)(1).

2 At all pertinent times, the Bureau of Indian Affairs (BIA) funded and operated LPCC.. [Doc. No. 1, ¶¶ 12, 13.] In fiscal year 2001, the Laguna Police Department, including its detention services, were funded by a contract between the Pueblo of Laguna and the United States Department of the Interior. (Pub. L. 93-638). [Doc. No. 12.].

and that the sexual relations constituted an assault and battery. [Id., ¶¶ 21, 25.] Plaintiff also contends that Defendant negligently failed to safeguard her well being through its improper training, supervision, and hiring practices of detention officers. [Id., Counts II and III.]

Defendant asserts that has not waived its sovereign immunity as to any of Plaintiff's claims, and further alleges, *inter alia*, that Plaintiff consented to sexual relations with Brown. [Doc. No. 10.]

**DISCUSSION**

**I. *PLAINTIFF's MOTION TO AMEND***

Plaintiff moved to amend her complaint seeking to add a claim of intentional infliction of emotional distress (IIED). [Doc. No. 17.] She argues that the government is not immune from suit under a theory of IIED. The government contends that the proposed claim of IIED is barred by the FTCA's intentional tort exception because the alleged conduct underlying the claim of IIED is based on the same conduct that supports the alleged assault and battery (which the government claims is also barred by the intentional tort exception). Thus, according to the government, the proposed amendment adding an IIED claim would be futile. [Doc. No. 21.] Plaintiff did not file a reply in support of her motion to amend.

Rule 15(a) governs circumstances where parties seek to amend a complaint after a responsive pleading has already been filed. Fed.R.Civ.P. 15(a). Such leave "shall be freely given when justice so requires." Id. While amendments are generally allowed, the most notable exceptions to that rule include a showing of undue delay, undue prejudice to the opposing party, or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Scott v. Hern, 216 F.3d 897, 906 (10th Cir. 2000); Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993). See also

Bell v. Manspeaker, et al., 34 Fed. Appx. 637, 2002 WL 532415 at *3 (Table, Text in Westlaw) (10th Cir. Apr. 10, 2002) (court was within its discretion to deny proposed amendment where the amendment sought to add a claim against a party who was absolutely immune from suit). An amendment is considered futile if it would not survive a motion to dismiss or for summary judgment. Bauchman v. W. High Sch., 132 F.3d 542, 562 (10th Cir. 1997), cert. denied, 524 U.S. 953 (1998); E. Spire Communications, Inc. v. Baca, ___ F. Supp. 2d ___, 2003 WL 21537806 at *17 (D.N.M. Jun. 12, 2003).

The United States, as a sovereign, is generally entitled to immunity from suit. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988)). However, the United States may be subject to suit to the extent it waives its sovereign immunity and/or if it consents to be sued. If there is no waiver of sovereign immunity, the government is immune from suit, and the court has no subject-matter jurisdiction to hear the case. United States v. Mitchell, 445 U.S. 535, 538, reh'g denied, 446 U.S. 992 (1980).

In enacting the FTCA, Congress waived the government's immunity from liability for certain torts, in particular for the negligent acts of government employees acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2671-2674. But, under an exception to that limited waiver of immunity, the United States retained its immunity from suit for certain enumerated intentional torts, including "[a]ny claim arising out of assault, battery, false imprisonment." 28 U.S.C. § 2680(h). Thus, for example, claims of assault or battery typically cannot be brought against the United States.

Plaintiff correctly points out that § 2680(h) of the FTCA does not specifically preclude an action against the United States under a theory of IIED. This is true because the tort of IIED is not enumerated in § 2680(h) as one of the torts from which the United States retains immunity.

Santiago-Ramirez v. Sec'y of Dep't of Def., 984 F. 2d 16, 20 (1st Cir. 1993). Accordingly, some courts have found, under certain circumstances, that the sovereign has waived immunity for IIED claims, and that such claims may proceed against the United States. Gross v. United States, 676 F.2d 295, 304 (8th Cir. 1982); Crain v. Krehbiel, 443 F. Supp. 202, 211 (N.D. Cal. 1977).

The narrower question here, however, is whether the claim of IIED is barred by provisions of the FTCA that permit the United States to retain its immunity as to claims "arising out of assault, battery." 28 U.S.C. § 2680(h). In other words, any claim that "arises out of" a battery could be precluded, even if the plaintiff does not explicitly identify it as a battery. Koch v. United States, 209 F. Supp. 2d 89, 94 (D.C. Cir. 2002), aff'd by, 2002 WL 31926832 (D.C. Cir. 2002).

> To determine whether an "arising out of" claim is excluded by § 2680, the Court must examine the actual conduct upon which plaintiff [] bases his claim for intentional infliction of emotional distress. If the alleged conduct constitutes a tort listed in § 2680, then this Court has no jurisdiction to hear the claim of intentional infliction of emotional distress. "In contrast, if a plaintiff bases a claim on conduct that does not constitute a claim 'arising out of' a tort specified in § 2680(h), then the plaintiff's suit is not barred."

Id. (Internal citations omitted.)

> Even if a plaintiff styles a claim so that it is not one that is enumerated in [S]ection 2680(h), the plaintiff's claim is still barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action."

Truman v. United States, 26 F.3d 592, 594 (5th Cir. 1994). (Internal citations omitted.) Thus, if the emotional distress claim is nothing more than a restatement of the battery claim, it is barred under § 2680(h). Orsay v. U. S. Dep't of Justice, 289 F.3d 1125, 1136 (9th Cir. 2002).[3] See also Mortise

---

3

The Ninth Circuit's earlier opinion of Sheehan v. United States, 896 F.2d 1168 (9th Cir. 1990) relied upon by Plaintiff did not answer the exact question before this Court. In Sheehan, the Circuit Court reversed the trial court's dismissal of the IIED claim, but remanded for the trial court to determine whether the allegations could independently support a claim of IIED, or whether those

v. United States, 910 F. Supp. 74, 77 (N.D. N.Y. 1995) (concluding that claims of IIED and assault were "one and the same" and that they both must be dismissed for lack of subject-matter jurisdiction), aff'd by, 102 F.3d 693 (2d Cir. 1996).

Here, the Court must decide if the actual conduct upon which Plaintiff premises her proposed claim of IIED arises out of, or is merely a restatement of the alleged assault and battery. If so, the amendment of the complaint to add such a claim would be futile.

In Plaintiff's proposed amended complaint, the allegations that support the claim of the IIED refer repeatedly to Brown's conduct "in engaging in sex with Ms. Vallo [Plaintiff] without her consent." [Doc. No. 17, ¶¶ 21, 22, 24, 33 of proposed amended complaint.] Indeed, the proposed claim of IIED incorporates all of the preceding paragraphs of the complaint, including the assault and battery allegations. [Id., ¶ 32.] There are no allegations supporting a claim of IIED that could be considered separate and distinct from those upon which the alleged assault and battery are premised. Stated differently, without the alleged assault and battery, there would no claim for IIED.

It is exactly this type of scenario that requires a court to look beyond the theory upon which the plaintiff may elect to identify his or her claim. A party may not circumvent the purpose of § 2680(h) by "framing" a claim in such a way to prevent immunity. Truman, 26 F.3d at 594. Instead, the court must evaluate the substance of the claim(s) at issue. Mortise, 910 F. Supp. at 77. Here, Plaintiff's assault and battery claim encompasses the claim of the proposed IIED, and the allegations that support those claims cannot be separated. Accordingly, the Court concludes that the alleged

allegations were related to conduct supporting the excluded torts of assault, libel, and slander. Thus, Sheehan does not support a different result than that reached by this Court.

underlying governmental conduct essential to Plaintiff's proposed claim of IIED is fairly read to "arise out of" the conduct that would tend to support the assault and battery claim.

As the Court explains in detail below, the assault and battery claim must be dismissed for lack of subject-matter jurisdiction. Since the assault and battery claim fails, so too must any claim that arises out of the alleged assault and battery. Orsay, 289 F.3d at 1136; Koch, 209 F. Supp. 2d at 94-95. See also Borawski v. Henderson, ___ F. Supp. 2d ___, 2003 WL 21339231 at *6 (D. N.J. June 10, 2003) (dismissing IIED claim because court lacked subject-matter jurisdiction to entertain claims of defamation and slander, and the allegations supporting the IIED claim were related to the claims of defamation and slander claims). Compare Truman, 26 F.3d at 595-96 (allowing the claim of IIED to proceed where the court concluded that the allegations did not support a claim of assault or battery and, accordingly, that the claim of IIED could not have arisen out of an assault or battery.)

Therefore, the Court denies Plaintiff's motion to amend because the proposed claim of IIED would not survive a motion to dismiss and/or for summary judgment, and is futile.

## II. ***UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT***

Defendant moved to dismiss Plaintiff's claims of assault and battery and negligence under Rules 12(b)(1) and (6) for lack of subject-matter jurisdiction and/or failure to state a claim. The government contends that the FTCA does not waive the United States sovereign immunity for any of the claims alleged in the complaint. Alternatively, Defendant requests summary judgment be granted in its favor based, in part, on affidavit testimony attached to its motion.

Plaintiff asserts that the government's motion should be construed as one for summary judgment. She then opposes the request for summary judgment on grounds that (1) genuine issues

of material fact exist to preclude summary judgment on the assault and battery claim, and that (2) the Court has subject-matter jurisdiction as a matter of law over the negligence claims.[4] Plaintiff also asserts through argument of counsel that more discovery is necessary as to both claims before the Court can make the requested rulings.

Whether considering a challenge to the Court's subject-matter jurisdiction brought under Rule 12(b)(1) or Rule 56, Plaintiff's burden remains essentially the same. She must present affidavit or other evidence sufficient to establish the Court's subject-matter jurisdiction by a preponderance of the evidence. United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 n.5 (10th Cir. 1999). In other words, when a party brings a Rule 12(b)(1) challenge to a court's subject-matter jurisdiction, a district court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). Similarly, under Rule 56, a party typically provides affidavit or other testimony in support of its request. Fed.R.Civ.P. 56(e). Here, the Court elects to treat Defendant's motion as one for summary judgment under Rule 56.

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for

---

4 Plaintiff's opposition to Defendant's motion also argues that the FTCA's intentional tort exception does not bar her proposed claim of intentional infliction of emotional distress (IIED). The proposed IIED claim is the subject of Plaintiff's motion to amend, which the Court has already denied. See discussion *supra*. The Court concludes that Plaintiff's argument regarding the proposed IIED claim has no bearing on Defendant's motion for summary judgment as to the battery and negligence claims.

summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits, or documentary evidence that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

**A. Sovereign Immunity as to the Assault and Battery Claim (Count I)**

As explained above, the Defendant is presumed to be immune from suit unless it expressly waives its immunity or consents to suit.[5] F.D.I.C., 510 U.S. at 475. The United States is liable under the FTCA only to the limited extent that the United States waives its sovereign immunity. 28 U.S.C. §§ 1346(b) and 2674. While the FTCA provides a limited waiver of immunity as to some tort claims, § 2680(h) exempts assault and battery claims from that waiver. Moreover, exceptions to the waiver of sovereign immunity by the United States are construed broadly, and any ambiguities are resolved against the party seeking recovery from the United States. Lane v. Pena, 518 U.S. 187, 192 (1996).

---

5 Threshold jurisdictional issues as to whether there is a waiver of immunity or consent to suit by the Defendant are questions of federal law. In contrast, questions of liability under the FTCA are determined in accordance with the law of the state where the alleged tortious conduct occurred. Franklin v. United States, 992 F.2d 1492, 1495 (10th Cir. 1993).

If this were all that § 2680 provided, the assault and battery claim would be dismissed because the United States clearly is immune from suit for "any claim arising out of assault, battery." However, § 2680 sets forth an exception stating that while the FTCA waiver of sovereign immunity shall not apply to assault and battery claims, the waiver of immunity will apply to any claim arising out of assault and battery "with regard to acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). Thus, the result is that § 2680(h) waives the United States' defense of sovereign immunity with respect to claims arising out of assault and battery if the alleged assault and battery were committed by the government's investigative or law enforcement officers. Dry v. United States, 235 F.3d 1249, 1257 (10th Cir. 2000). The statute defines "'investigative or law enforcement officer'" to mean "any officer of the Defendant who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

Defendant admits that Brown was a federal employee for purposes of the FTCA and that his actions could subject Defendant to liability under certain circumstances. [Doc. No. 12, p. 11.] However, the government argues that detention officers of the Laguna Police Department, like Brown, are not "'investigative or law enforcement officers.'" Id. For example, Laguna detention officers are not authorized by law to execute searches, seize evidence, or make arrests for violations of federal law. [Doc. 13, Ex. B, ¶¶ 4-6, Ex. E.] Moreover, Defendant asserts that it is undisputed that the Bureau of Indian Affairs (BIA) did not issue a special law enforcement officer (SLEO) commission to Brown, which would have authorized him to enforce federal law. [Id., Ex. A, at ¶ 5.] In fact, the government provides affidavit testimony that because Brown was a tribal detention officer, rather than a tribal police officer, the BIA would not have considered him qualified for a

SLEO commission. [Id., Ex. A, at ¶¶ 4-5.] In sum, Defendant claims that because Brown does not meet the statutory definition of "investigative or law enforcement officer," Defendant is immune from suit for a claim arising out of alleged assault and battery by Brown. Id.

Plaintiff's opposition to the government's position is technical in nature and unpersuasive. She asserts that because Defendant attached the wrong exhibit to its service copy of the motion to dismiss, Defendant did not provide uncontroverted evidence that Brown was not issued a SLEO commission. Notwithstanding this insignificant service mix-up, Plaintiff provides no evidence to raise a genuine issue of material fact as to Brown's status or authority. Instead, Plaintiff argues through counsel that she should be entitled to pursue discovery under Rule 56(f) to determine whether Brown was issued a SLEO commission, or to assess his authority as a detention officer.

The problem with Plaintiff's request for discovery is that she failed to abide by Rule 56(f), which requires a party to present affidavit testimony regarding why she needs additional discovery before responding to a motion for summary judgment. Fed.R.Civ.P. 56(f). Plaintiff not only failed to file an affidavit requesting discovery, she did not satisfy other requirements of Rule 56(f). For example, Plaintiff did not explain why facts precluding summary judgment could not be presented, did not identify the probable facts that were not available to her, and did not state what steps she had taken to obtain those facts. See Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000). Plaintiff's "'counsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver.'" Id. (Internal citation omitted.) Indeed, "'[w]here a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of

discretion in granting summary judgment if it is otherwise appropriate.'" Id. at 783-84. (Internal citation omitted.)

In her opposition, Plaintiff also concedes that if Brown is not a "federal law enforcement officer" as defined by the FTCA, her claim of assault and battery must be dismissed in accordance with the Tenth Circuit opinion in Dry, 235 F.3d at 1257.[6] [Doc. No. 16, p. 8.] The Court agrees that Dry compels dismissal of the assault and battery claim based on the undisputed material facts presented by Defendant. Therefore, the Court grants Defendant's motion for summary judgment as to Count I of Plaintiff's complaint, and will dismiss the assault and battery claim with prejudice for lack of subject-matter jurisdiction.

**B. Sovereign Immunity as to the Negligence Claims (Counts II and III)**

The question of whether the negligence claims can proceed presents a closer call. The FTCA allows the United States to be sued for money damages for personal injuries caused by negligent or wrongful acts of government employees who are acting within the scope of employment. 28 U.S.C. § 1346(b). Notwithstanding this provision, if the negligence claims "arise out of" or necessarily arise from an alleged assault and battery, the United States has not waived its immunity, and it follows that the Court does not have subject-matter jurisdiction over those claims.

The government contends both negligence claims should be dismissed because they "arise out of" the assault and battery claim. Defendant urges that Plaintiff cannot merely recast her claim of

6 Plaintiff's same attorneys agreed in the similar case of Martinez v. United States that she [Ms. Martinez] would "likely concede" "in her duty of candor to this Court," that a battery claim against the defendant would fail under the Tenth Circuit's decision in Dry. [Doc. No. 26 in No. CIV 02-1164.] Martinez, like Plaintiff, made the concession because the Laguna officer in that case was not a "federal law enforcement officer." Based on Martinez's concession and "pursuant to Dry," The Honorable Leroy Hansen dismissed the battery claim. [Doc. No. 26 in No. CIV 02-1164.]


assault and battery as one of negligence. To do so would allow a party to circumvent the exclusions from governmental liability contained in the FTCA and undermine Congress' clear intent to limit waivers of immunity. See, e.g., Lilly v. United States, 141 F. Supp. 2d 626, 629 (S.D. W.Va. 2001), aff'd by, 2001 WL 1635446 (4th Cir. 2001), cert. denied, 536 U.S. 939 (2002).

In contrast, Plaintiff contends that the negligence claims are independent from the assault and battery claim and, therefore, do not arise from the assault and battery. In other words, she posits that the government can be found independently liable for its own negligence related to training, supervision, and hiring practices. Plaintiff also argues that the United States Supreme Court decision of Sheridan v. United States, 487 U.S. 392 (1988) supports a finding that the negligence claims can proceed.[7]

Although Plaintiff's complaint articulates two separate negligence causes of action —"individual negligence" and "institutional negligence,"—both attempt to hold Defendant liable for negligent training, supervision, and hiring practices. Thus, the Court analysis focuses on whether it has subject-matter jurisdiction over a claim of negligent hiring, supervision, and retention, or whether the claim arises out of the alleged assault and battery.

> The majority of the circuits [including the Tenth Circuit] addressing the meaning of the "arising out of" clause have adopted the *Shearer II*-plurality view [United States v. Shearer, 473 U.S. 52 (1985)] that a negligent hiring, supervision, or retention claim necessarily arises out of an underlying intentional tort, precluding government liability under the FTCA.

7

While the Court considers the holding of Sheridan in reaching its conclusion here (see discussion *infra*), it notes that the Supreme Court did not reach the question of whether a negligent hiring, supervision, or training claim may ever provide a basis for liability under the FTCA for a foreseeable assault or battery by a government employee. Sheridan, 487 U.S. at 403 n.8.

Borawski, 2003 WL 21339231 at *7 (relying on decisions from the Second, Fourth, Fifth, Eighth, and Tenth Circuits, but noting the Ninth Circuit's contrary position).

In Franklin v. United States, 992 F.2d 1492, 1498 (10th Cir. 1993), the court rejected the plaintiff's attempt "to recast a battery claim (surgery without competent consent) as a negligent failure to prevent the battery (by not ensuring that a competent consent was obtained)." The Tenth Circuit acknowledged, however, the possibility that a negligence claim might proceed if it was based on the government's "breach of a duty owed the victim that is independent of its relationship, if any, to the perpetrator." Id. In setting forth the latter proposition, the Tenth Circuit relied on the Supreme Court decision of Sheridan, 487 U.S. at 400-03.

In Sheridan, the Supreme Court recognized that notwithstanding § 2680(h), the FTCA permitted claims arising out of an assault and battery "that are the product of *independent acts of negligence* by a government official." Griego v. United States, 2000 WL 33348763 at *4 (W.D. Tex. June 2, 2000) (citing Sheridan, 487 U.S. at 398). The facts of Sheridan, however, are distinguishable from those at issue here. In Sheridan, an obviously intoxicated serviceman ("tortfeasor") fired a rifle into a vehicle driven by the plaintiffs on a public street and caused injuries. Earlier that evening, three naval corpsmen observed the tortfeasor lying face down in a drunken stupor on the floor of a hospital building. The corpsmen attempted to take him to the emergency room, but he fled. As the tortfeasor ran away, the corpsmen saw the barrel of a rifle protruding from the bag he was carrying. Instead of reporting this incident to appropriate authorities, the corpsmen also fled and took no further action, notwithstanding their knowledge that the tortfeasor was heavily intoxicated and carrying a weapon. The shooting occurred later that evening. 487 U.S. at 394-95.

Under those facts, the court held that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the tortfeasor's] employment status." Id. at 401. Thus, in Sheridan, the alleged negligence of the three servicemen was independent of the intentional tort committed by intoxicated sailor and did not arise out of the battery.

The Tenth Circuit decided Franklin after Sheridan, but the court did not find the Sheridan holding to be dispositive on the question before it. Instead, the Tenth Circuit considered the Shearer II plurality's analysis of § 2680(h) with limited qualifications after Sheridan to remain the prevailing view in deciding the question of immunity before it. The Shearer II plurality stated:

> No semantical recasting of events can alter the fact that the battery was the immediate cause of [the decedent's] death, and consequently, the basis of [plaintiff's] claim.
>
> [Plaintiff] cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like [plaintiff's] that sound in negligence but stem from a battery committed by a Government employee.

United States v. Shearer, 473 U.S. 52, 55 (1985) (emphasis in original) (cited with approval in Franklin, 992 F.2d at 1498).

In Franklin, the Tenth Circuit reasoned that the "government would have no potential liability if not for the fact that those responsible for the intentionally tortious medical care alleged in the complaint were [government] employees." 992 F.2d at 1499. The court concluded that negligence type allegations were "part and parcel of the very battery claim that has implicated § 2680(h) from the outset." Id. Thus, the Tenth Circuit found that the government was immune from suit for the claim of negligent failure to prevent the battery. In addition, the Tenth Circuit found that the claim

of "institutional-type negligence" (including allegations that the defendant breached a duty to follow procedures) did not contain allegations of proximate cause "sufficient to tie the defendant's alleged negligence to the plaintiff's injury." Id.; see also Hoot v. United States,[8] 790 F.2d 836, 839 (10th Cir. 1986) (remanding to dismiss case where the plaintiff's negligence claim arose out of the assault and battery and "no amount of 'semantics' [could] change it."); Johnson v. United States, 788 F.2d 845, 850, 854 (2d Cir. 1986) (affirming dismissal of negligent supervision claim for lack of subject-matter jurisdiction), cert. denied, 479 U.S. 914 (1986); Borawski, 2003 WL 21339231 at *7 (dismissing negligent hiring and retention claim because claim arose out of tortfeasor's intentional tort).

In addition, a number of decisions from other courts are instructive in resolving this matter. For example, in Lilly, a federal trial court analyzed a similar action for sexual assault, including a claim that the United States was negligent in its hiring, training and supervising of the tortfeasor and that the United States breached its affirmative duty of care to protect the victim. Lilly, 141 F. Supp. 2d at 627. The court dismissed the complaint because it was impossible to separate the tortfeasor's intentional acts from any negligent acts on the part of the United States. Id. at 630. "[T]he plaintiff cannot allege that the United States breached a duty to her unless she can show that a specific Defendant employee, other than the intentional tortfeasor, negligently breached a duty to her." Id. In reaching its decision, the court noted that "'[m]any assaults can be attributed easily enough to someone's negligence in permitting the attack to take place. To hold such allegations actionable under the FTCA would undermine Congress' clear intent to limit its waiver of immunity in § 2680(h).'" Id. at 629. (Internal citation omitted.)

---

8

While some research databases show that the United States Supreme Court holding of Sheridan disagreed with Hoot, the Tenth Circuit in the later decision of Franklin continued to recognize the validity of the Hoot decision. Franklin, 992 F.2d at 1498.

Similarly, in Griego, 2000 WL 33348763 at *6, the court dismissed the negligent hiring claim after considering the plaintiff's allegations that the government knew the tortfeasor was unfit, failed to provide him with proper supervision and training, and negligently hired him.

> Clearly, Plaintiff would have no claim but for the fact that [the tortfeasor] assaulted Plaintiff. Any negligence on the United States' part, accordingly, is not independent from [the tortfeasor's] intentionally tortious act. Plaintiff cannot logically contend that hiring an unfit employee is wholly separate from the very reason Plaintiff claims he is unfit—his alleged propensity to sexually assault other employees.

Id.

Here, the Court has carefully considered the allegations of negligence made in Plaintiff's complaint, and the argument presented in her brief, along with her exhibits.[9] Plaintiff alleges in her complaint that Defendant unreasonably failed to safeguard her by failing to adequately train and supervise Brown. [Doc. No. 1.] She contends that Defendant knew, or reasonably should have known, of Brown's alleged unlawful conduct. In addition, she asserts that the LPCC and the BIA failed to institute adequate procedures in relation to hiring, background checks, training, and supervision. [Id.]

In her opposition to the government's motion, she alleges more specifically that the BIA and/or LPCC failed to follow federal policies and procedures that required inmates to be protected against sexual assault, and that management knew, or should have known, of "rampant illicit activity within the [LPCC]" including sexual activities and the use of drugs. [Doc. 16, pp. 13-14.] Plaintiff attaches to her response as exhibits some of the pertinent LPCC/BIA detention standards. She also provides exhibits concerning the investigation of the alleged incident at issue, along with

---

9 The Court rejects Plaintiff's request for additional discovery on this issue because, as stated *supra*, Plaintiff failed to comply with the requirements of Rule 56(f).

correspondence between the Laguna Police Department and the BIA, regarding the allegations and/or the department's review of the accusations.  [Id., Exhs. 1-4.]

The Court concludes that Plaintiff has not provided sufficient allegations to support a separate or independent negligence cause of action.  In other words, the alleged negligent acts do not appear to have been antecedent to the assault and battery.  Rather, the alleged negligence arises from the assault and battery.

Moreover, for the most part, Plaintiff's allegations of negligence are conclusory and general. For example, Plaintiff provides no factual basis to show that any actual hiring and training procedures were violated, or how the LPCC/BIA hiring procedures are inadequate.  Nor does she supply any allegations or evidence that Brown had a history of sexual misconduct, or misconduct of any nature. She alleges generally that the LPCC or BIA should have known of Brown's propensity to act unlawfully and yet provides no factual basis for why Defendant reasonably should have known that Brown had these tendencies.  As one of the concurring justices stated in Sheridan, if the plaintiff only had to allege the government was negligent in the supervision or selection of the employee-tortfeasor, "litigants could avoid the substance of the [intentional tort] exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisors."   487 U.S. at 407 (Kennedy, J. concurring in judgment).

The Court finds that absent the alleged assault and battery, there would be no claim of negligence based on the allegations presented by Plaintiff.  "[Section] 2680(h) prohibits claimants from clothing assault and battery [claims] in the garb of negligence by claiming negligent failure to prevent the attack." Johnson, 788 F.2d at 850.  Yet that is exactly what Plaintiff improperly attempts

to do when she alleges that "the BIA and Laguna Police Management thereby unreasonably and negligently permitted detention officers to engage in sex with inmates." [Doc. No. 16, p. 14.]

In addition, Plaintiff presents absolutely no evidence to show that the BIA or LPCC knew, or should have known, of sexual misconduct by detention officers prior to the incident. All of the attached exhibits refer to the subsequent investigation of the incident of which Plaintiff complains occurred in February 2001. It cannot be inferred from any of the attached documents that the BIA or LPCC had reason to know that alleged misconduct occurred before February 2001.

Because it is impossible to separate the alleged intentional acts of the tortfeasor from any negligent acts of the government, the Court concludes that government liability for the negligence claims is precluded by the FTCA. Therefore, the Court grants Defendant's motion for summary judgment as to Counts II and III of Plaintiff's complaint and will dismiss the negligence claims with prejudice for lack of subject-matter jurisdiction.

## CONCLUSION

For all of the reasons stated above, Plaintiff's motion to amend will be denied, and Defendant's motion for summary judgment will be granted.

**IT IS, THEREFORE, ORDERED** that ***Plaintiff's Motion to Amend*** [doc. no. 17] is **DENIED**.

**IT IS FURTHER ORDERED** that the ***United States' Motion to Dismiss or, in the Alternative, for Summary Judgment*** [doc. no. 11] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's ***Complaint for Sexual Assault, Battery, & Money Damages*** [doc. no. 1] is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 25th day of July, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*